631 A.2d 1045

**Katherine PAGNOTTI and Frank Pagnotti, Jr., Individually and Frank Pagnotti, Jr., Administrator of the Estate of Frank Pagnotti, Sr.**

v.

**OLD FORGE BANK.**

**Appeal of Frank PAGNOTTI, Jr., and Frank Pagnotti, Jr., Administrator of the Estate of Frank Pagnotti, Sr.**

Superior Court of Pennsylvania.

Argued May 13, 1993.

Filed Sept. 30, 1993.

40

Christopher B. Jones, Scranton, for appellant.

Scott A. Herlands, Scranton, for appellees.

Before BECK, POPOVICH and HESTER, JJ.

POPOVICH, Judge.

This is an appeal of the judgment entered in favor of appellee, Katherine Pagnotti by the Court of Common Pleas of Lackawanna County. We affirm.

On November 12, 1985, appellee opened a bank account at Old Forge Bank. Appellee deposited in the account money received from her social security and black lung benefits. Appellee subsequently added her son's name, Frank Pagnotti, to the account, thus creating a joint savings account. On August 21, 1986, the signature card for the account was changed so that the signatures of both owners of the account were required to make withdrawals from the account.

In August of 1990, Frank Pagnotti died intestate. Thereafter, when appellee attempted to withdraw funds from the account, she was refused access to any funds in the account. After appellee's requests to the bank to release the funds in the account were denied, appellee filed a writ of summons, naming Old Forge Bank as the defendant. Old Forge Bank filed a petition to interplead appellant, Frank Pagnotti, Jr., decedent's son and administrator of decedent's estate.

Appellant filed a statement of claim to which appellee filed an answer. Next, appellant filed preliminary objections wherein appellant claimed that appellee was not a competent witness pursuant to the Dead Man's Act.[1] The trial court ruled that appellee was competent to testify under the devisavit vel non exception to the Dead Man's Act. Following the

1. 42 Pa.C.S.A. § 5930 (relating to incompetent testimony in a civil action by a witness to occurrences prior to the death of a party whose interest is adverse to that of the witness "unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses").

trial, the court dismissed appellant's statement of claim and ordered the Old Forge Bank to release the funds in the account to appellee. Appellant's motion for post-trial relief was denied, and the instant appeal followed.

Appellant contends that appellee should have been precluded from testifying pursuant to the Dead Man's Act. Appellant, as the party challenging the competency of a witness, has the burden of proving incompetency. *In re Estate of Rider*, 487 Pa. 373, 409 A.2d 397 (1979). For a witness to be disqualified as a witness under the Dead Man's Act, the following must be proven:

> (1) the deceased must have had an interest in the matter at issue, i.e., an interest in the immediate result of the suit; (2) the interest of the witness must be adverse; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.

*Id.* at 399 (citations omitted). Several exceptions to the Dead Man's Act are included in the statute, one of which is the devisavit vel non exception. In *Dalbey's Estate*, 326 Pa. 285, 192 A. 129 (1937), our supreme court stated that the devisavit vel non exception:

> renders competent all witnesses in disputes involving the testamentary disposition of property regardless of any interest possessed by them in the particular decedent's property. This rule is in keeping with the modern tendency to admit all testimony having a direct bearing on issues involved, notwithstanding the witness' interest, which reflects only on his credibility. This is especially true where other evidence is at times unavailable, as is frequently the case in litigation of this character.

"The Dead Man's Act renders the witness' testimony competent where the controversy over decedent's property is between parties respectively claiming such property 'by devolution on the death of the owner.'" *In re Estate of McClain*, 481 Pa. 435, 392 A.2d 1371, 1375 (1978). The definition of the term "devolution" includes the transfer of a decedent's property both by operation of law and by will. *Id.*

In the present case, the decedent and appellee owned a bank account. Following the decedent's death, appellant and appellee each claimed a right to the money in the account. Appellee claimed that the bank account, owned by decedent and appellee, was a joint account with right of survivorship. Appellee, therefore, asserted that the money remaining in the account following the death of the other owner of the account would pass by operation of law to appellee. Appellant argued that the bank account was owned by appellee and decedent as a tenancy in common, and, therefore, by operation of law, decedent's estate was entitled to half of the money remaining in the account following decedent's death.

Each party was claiming the right to the money in the bank account by devolution following the death of an owner of the account. Therefore, all witnesses in the present action were competent to testify. *Id.* The trial court allowed appellee to testify according to the devisavit vel non exception to the Dead Man's Act. N.T., 10/20/92, at 12. We find that the trial court did not commit an error of law when it ruled that appellee was competent to testify. *Cf. Williams v. Fund of $1230.10,* 178 Pa.Super. 420, 116 A.2d 266 (1955) (wherein this court ruled a witness incompetent to testify pursuant to the Dead Man's Act but the court did not consider the devisavit vel non exception to the Dead Man's Act).

Appellant's second argument is that the bank account owned by appellee and decedent was owned as a tenancy in common and not as a joint account with right of survivorship. Appellant contends that the trial court committed an error of law by applying 20 Pa.C.S.A. § 6304 in reaching its decision that the bank account was a joint account with right of survivorship. Appellant cites *Williams, supra,* in support of appellant's argument that the bank account was owned as a tenancy in common. This court held in *Williams,* that in a case in which the evidence indicated only the existence of a fund in the names of two parties who were not husband and wife and money could be withdrawn only upon the signature of both parties, the law favors a presumption that the account was owned as a tenancy in common rather than a joint

tenancy, in the absence of proof of intent that the latter should be formed. In *Williams,* the court noted that it could not determine the source of the funds of the account. The facts of the present case are different from the facts of *Williams.* Instantly, the evidence shows that appellee originally opened a bank account in her name only, and that she was the only person who deposited money into the account. Appellee later added her son's name to the account, but he did not deposit any money into the account.

The present case can be further distinguished from *Williams* in that we are bound by 20 Pa.C.S.A. § 6301 *et seq.* which was codified after the filing of *Williams, supra.*[2] Pursuant to the Pennsylvania Probate Estates and Fiduciaries Code, a joint account is defined as follows:

"Joint Account" means an account payable on request to one or more of two or more parties whether or not mention is made of any right of survivorship.

Section 6304 of Title 20 creates a presumption that a bank account is a joint account with right of survivorship. The presumption can be overcome only by a presentation of clear and convincing evidence of a different intent. Specifically, 20 Pa.C.S.A. § 6304 provides the following:

Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created.

According to 20 Pa.C.S.A. §§ 6301, 6304, the bank account created by appellee and decedent was a joint account with right of survivorship. After reviewing the proceedings below, we find that appellant failed to present clear and convincing evidence to rebut the presumption that appellee and decedent created a joint account. Appellee testified that she added her son's name to the account because she was concerned about a

2.  Chapter 63 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §§ 6301–6306 (Supp.1993) (added by the Act of July 9, 1976, P.L. 547, No. 134, effective September 1, 1976) altered the law of this Commonwealth applicable to joint interests in bank accounts.

nursing home taking her money. N.T., 10/20/92, at 16. Appellee further testified that she intended her son to receive all the money in the account if appellee died before her son, and if appellee's son died before appellee, she would own the money in the account. N.T. 10/20/92, at 18. Appellant argues that the requirement of both appellee's and decedent's signatures for withdrawals is evidence that the account was not a joint account. However, this evidence alone does not rebut the presumption that the bank account was a joint account, especially when we consider appellee's testimony of her intentions in adding her son's name to the account. We affirm the trial court's decision to award the funds in the account to appellee.

Judgment affirmed.

BECK, J. files a Concurring Opinion.

BECK, Judge, concurring.

I join in the majority's decision to apply the devisavit vel non exception to the Dead Man's Act and affirm the judgment in favor of appellee Katherine Pagnotti. I write separately to emphasize my belief that the Dead Man's Act has outlived its usefulness as a rule of evidence and should be repealed.

> The stated purpose of the Act in this Commonwealth is: to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of a decedent, when the decedent's representative would be hampered in attempting to refute the testimony or be in no position to refute it, by reason of the decedent's death.

*In re Estate of Hall,* 517 Pa. 115, 535 A.2d 47, 53 (1987).

Although to "prevent injustice" surely is our goal, I believe the Act does more to hinder the truth-seeking process, and thereby *cause injustice,* than prevent it. As McCormick aptly has noted:

> [T]he expedient of refusing to listen to the survivor is, in the words of Bentham, a "blind and brainless" technique. In

seeking to avoid injustice to one side, the statute-makers ignored the equal possibility of creating injustice to the other. The temptation to the survivor to fabricate a claim or defense is obvious enough, so obvious indeed that any jury will realize that his story must be cautiously heard. A searching cross-examination will usually, in case of fraud, reveal discrepancies inherent in the "tangled web" of deception.

McCormick on Evidence § 65 (4th Ed.1992).

The drafters of the Federal Rules of Evidence wisely have understood the distinction between the *competency* of a witness and his or her *credibility*. The Rules therefore contain no "Dead Man's" provision. Rule 601 directs that "every person is competent to be a witness," and this general mandate is balanced by Rule 607: "The credibility of a witness may be attacked by any party, including the party calling the witness." The Federal Rules of Evidence reflect a preference for an effective cross-examination over a rule of outright incompetency. I believe these Rules provide the better model.